**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MOHAMED MOKHTAR HAMMAMI,** | **1:19-CV-00741-LJO-EPG** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| **WILLIAM BARR, Attorney General for the United States,** *et al.,* | |
| **Defendants.** | **(ECF No. 14)** |

**I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of any District Judge in the Eastern District of California, who must prioritize criminal and older civil cases.

Civil trials in the Eastern District of California trail until the District Judge becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset

1

1  to a later date if the District Judge is unavailable on the original date set for trial.

2  ## II. INTRODUCTION

3  Before the Court is Plaintiff Mohamed Mokhtar Hammami's ("Plaintiff") motion for summary

4  judgment in a case seeking review of the Government's denial of his application for naturalization. *See*

5  ECF No. 1. Plaintiff was granted legal permanent residence in the United States; however, the

6  Government later denied his application for naturalization, arguing, in essence, that the previous grant of

7  permanent residency was improvident and for that reason cannot satisfy the residency requirement for

8  naturalization. ECF Nos. 1 at ¶¶ 12, 17, 21; 17 at 11-12.[1] Plaintiff contends the Government is estopped

9  from denying him naturalization on certain grounds. The Court finds it appropriate to rule on Plaintiff's

10  motion without oral argument. *See* Local Rule 230(g). For the following reasons, the Court DENIES the

11  motion.

12  ## III. BACKGROUND

13  Plaintiff is a citizen of Tunisia who immigrated to the United States, though his exact date of

14  arrival is unclear from the record. ECF No. 15 at 2. On November 20, 2000, he married Michele

15  Thomas,[2] who shortly after filed an application with United States Citizenship and Immigration Service

16  ("USCIS")[3] for Plaintiff's lawful permanent residency ("LPR") based on spousal relationship. ECF No.

17  1 at ¶ 4.  On June 13, 2001, Plaintiff and Thomas divorced. ECF No. 15 at 2. Approximately three years

18  later, on April 16, 2004, Thomas pled guilty and was convicted in a California state court on multiple

19  counts related to a marriage fraud scheme. ECF No. 11-1 at 2, 73. During the investigation of Thomas,

20  she asserted to federal officers that her marriage to Plaintiff had been fraudulent. *Id*. at 1, 248.

21  On July 4, 2001, three weeks after Plaintiff's finalized divorce from Thomas but before the

22

23  ---

[1] Pin cites refer to the ECF-generated pagination in the upper right-hand corner of the document header.

24  [2] Ms. Thomas' first name is spelled variably in the pleadings. Because there is record evidence suggesting "Michele" is correct, ECF No. 11-1 at 105-07, the Court adopts that spelling.

[3] USCIS was formerly known as Immigration and Naturalization Service or INS.

25

1   criminal case against her had been filed, Plaintiff married Aracely Fernandez. ECF Nos. 1 at ¶ 6; 16 at

2   Ex. E. On September 17, 2001, Fernandez in turn filed an application for Plaintiff's LPR based on their

3   recently formed spousal relationship. ECF Nos. 1 at ¶ 7, 15 at 2. On September 22, 2005, USCIS sent a

4   "Notice of Intent to Deny" Plaintiff's LPR application, and on December 21, 2005,[4] USCIS entered the

5   denial. ECF Nos. 11-1 at 259, 15 at 2, 16 at Ex. F. Plaintiff's application for LPR was denied on the

6   basis of his first marriage to Thomas, which USCIS officials characterized as fraudulent. ECF Nos. 11-1

7   at 259-65.  On January 9, 2006, Plaintiff appealed the decision to the Board of Immigration Appeals

8   ("BIA"). ECF No. 16 at Ex. H. Such appeals are submitted through the USCIS office "having

9   administrative control" over the matter. *See* 8 C.F.R. § 1003.3.

10        Relevant here, under 8 C.F.R. § 1003.5(b):

11        If an appeal is taken from a decision of a Service officer, the record of
          proceeding shall be forwarded to the Board [of Immigration Appeals] by
12        the [Citizenship and Immigration] Service officer promptly upon receipt
          of the briefs of the parties, or upon expiration of the time allowed for the
13        submission of such briefs. **A Service officer need not forward such an
          appeal to the Board, but may reopen and reconsider any decision**
14        made by the officer if the new decision will grant the benefit that has been
          requested in the appeal. **The new decision must be served on the**
15        **appealing party within 45 days** of receipt of any briefs or upon
          expiration of the time allowed for the submission of any briefs. **If the new**
16        **decision is not served within these time limits or the appealing party**
          **does not agree that the new decision disposes of the matter, the record**
17        **of proceeding shall be immediately forwarded to the Board.**

18   8 C.F.R. § 1003.5(b) (emphasis added).

19        It is unclear from the record evidence what, precisely, happened to Plaintiff's appeal once it was

20   received by the USCIS office to which it was submitted. However, some thirty-two months later, USCIS

21   issued a "Service Motion to Reopen/Reconsider" dated September 15, 2008. ECF No. 16 at Ex. I. While

22   Plaintiff asserts that in approximately 2007, "USCIS requested that BIA return [Plaintiff's appeal] back

---

24   [4] Where dates contained in the record evidence conflict but are not material to the Court's decision, the Court does not
     address the discrepancies. *See, e.g.*, ECF No. 15 at 2 ("December 2, 2005"); ECF No. 16 at 33 ("December 21, 2005"); ECF
25   No. 16 at 3 ("December 2, 2006").

1   to USCIS," ECF No. 1 at 3, which resulted in the reopening of Plaintiff's case, the Government states

2   that "rather than submit the appeal to the BIA," USCIS "appears to have elected to reopen the case,"

3   ECF No. 17-1 at 2. On April 16, 2009, USCIS granted Plaintiff LPR status, reversing its previous

4   decision. ECF Nos. 11-1 at 640, 16 at ¶ o.

5        On November 26, 2014, Plaintiff applied for naturalization. ECF Nos. 11-1 at 13-38, 16 at ¶ q.

6   One of the requirements of naturalization is lawful residency in the United States for at least five years

7   prior to application. 8 U.S.C. § 1427. On February 10, 2016, Plaintiff's naturalization application was

8   approved by USCIS. ECF Nos. 1 at ¶ 11, 16 at Ex. Q. However, on March 10, 2016, USCIS issued

9   another "Service Motion to Reopen/Reconsider," this time in relation to Plaintiff's naturalization

10   application. ECF Nos. 1 at ¶ 15, 11-1 at 6. On October 24, 2017, USCIS reversed its decision and

11   rescinded its approval of Plaintiff's naturalization application, and on April 8, 2019, USCIS affirmed the

12   reversal after Plaintiff's request for a hearing. ECF Nos. 11-1 at 1-5, 8-12; 16 at ¶ r.  The agency wrote

13   that its denial was based on Plaintiff's allegedly fraudulent first marriage of Plaintiff to Thomas. ECF

14   No. 11-1 at 1-5, 8-12. According to USCIS, as a consequence of the alleged fraudulent marriage,

15   Plaintiff's years in LPR status in the United States cannot serve as the residency basis for his

16   naturalization application. *Id.*

17        Plaintiff seeks review of USCIS' decision. ECF No. 1. This Court has jurisdiction to review the

18   matter under 8 U.S.C. § 1421(c). On September 27, 2019, Plaintiff filed a motion for summary judgment

19   seeking to estop certain grounds for the Government's denial on naturalization. ECF No. 14. The

20   Government filed its opposition on October 15, 2019. ECF No. 17. Plaintiff's reply was submitted on

21   October 21, 2019. ECF No. 18.

22                       **IV. <u>LEGAL STANDARD</u>**

23        Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary

24   judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

25

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50.

A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

## V. <u>ANALYSIS</u>

The primary thrust of Plaintiff's argument is that collateral estoppel bars USCIS from now raising again his alleged fraudulent marriage as part of its review of his naturalization application, since the facts regarding the marriage were known to USCIS, and according to Plaintiff were contested and adjudicated, when USCIS granted him LPR. *See generally* ECF Nos. 14, 18. The Government opposes,

1   arguing firstly that Plaintiff's LPR was granted mistakenly and that the Immigration and Nationality Act

2   ("INA") allows the Government to determine anew at naturalization whether an applicant's LPR was

3   correctly granted in the first instance even if certain issues were previously litigated and adjudicated.

4   ECF No. 17 at 8-17. The Government contends secondly that, even if collateral estoppel does apply,

5   Plaintiff's particular case does not satisfy the analytical framework for collateral estoppel to apply here.

6   *Id*. at 11-16.

7   **A.      Collateral Estoppel and Naturalization**

8           The first issue before the Court is whether collateral estoppel applies to a naturalization

9   determination in which an applicant's period of lawful residency involves previously contested and

10  adjudicated issues. The Ninth Circuit has not addressed this exact question; however, it has determined

11  that collateral estoppel and res judicata apply in other immigration and naturalization contexts. *See, e.g.,*

12  *Belayneh v. I.N.S.*, 213 F.3d 488, 492 (9th Cir. 2000) ("Issue preclusion applies to immigration

13  proceedings."); *Ramon-Sepulveda v. I.N.S.*, 824 F.2d 749 (9th Cir. 1987) (granting writ of mandamus

14  terminating agency's deportation proceedings based on res judicata when immigration judge previously

15  terminated separate deportation proceedings for lack of evidence).

16          Further, "[i]t is generally presumed that 'the common-law doctrines of collateral estoppel (as to

17  issues) and res judicata (as to claims) [apply] to those determinations of administrative bodies that have

18  attained finality.' " *Ahmad v. Johnson*, No. 16-CV-01776, 2017 WL 6945395, at *6 (N.D. Cal. Oct. 10,

19  2017). Courts may assume that "Congress has legislated with an expectation" that well-established

20  common law principles such as the rules of preclusion "will apply except when a statutory purpose to

21  the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).

22          The Government contends that LPR status is reviewed entirely anew upon application for

23  naturalization, based on 8 U.S.C. § 1429, which establishes that an applicant for naturalization bears the

24  burden of proof "to show that he entered the United States lawfully, and the time, place, and manner of

25

6

1   such entry into the United States." 8 U.S.C. § 1429. The Government suggests that application of

2   collateral estoppel is precluded by Congress' intent that USCIS conduct this renewed admissibility

3   inquiry. ECF No. 17 at 8-18. In addition, the Government points to 8 U.S.C. § 1421, which establishes

4   that the district courts review a denied naturalization application de novo. *Id*. at 18-19.

5          The Government's argument that "[n]aturalization cannot be conferred via estoppel where the

6   statutory requirements for citizenship … are not demonstrated" is a true statement. ECF No. 17 at 17.

7   However, the Government's argument misses the forest for the trees. Plaintiff does not contend that a

8   court may apply collateral estoppel to confer naturalization. Similarly, Plaintiff's position is not that a

9   USCIS grant of LPR status is, in and of itself, sufficient to invoke collateral estoppel on the legal

10  residency aspect of naturalization review. Rather, Plaintiff argues that the facts of his alleged fraudulent

11  marriage were known to the Government when Plaintiff's application for LPR was considered, those

12  facts were contested, and Plaintiff's case ultimately was adjudicated in his favor, meaning collateral

13  estoppel bars the Government from now re-adjudicating what was previously litigated—the narrow issue

14  of his alleged fraudulent first marriage.

15         To be sure, in the cases cited by the Government the circuit courts did not apply res judicata or

16  collateral estoppel, but those cases are inapposite in at least one salient aspect. *See, e.g., Turfah v.USCIS*,

17  845 F.3d 668 (6th Cir. 2017) (finding petitioner was not lawfully admitted for naturalization purposes

18  when he was mistakenly allowed to enter the country on a visa type that did not apply to his

19  circumstances and which later formed the basis for his LPR); *Saliba v. Att'y Gen.*, 828 F.3d 182 (3d Cir.

20  2016) (finding petitioner was not lawfully admitted for naturalization purposes when he fraudulently

21  obtained Temporary Protected Status for admission to the country and that status later formed the basis

22  for his LPR). The cases cited by the Government involve legal permanent residency conferred to

23  naturalization petitioners without contestation or challenge to the petitioners' basis for receiving it at the

24  time the status was granted. That is to say, the petitioners were granted LPR based on mistake or fraud

25

that went undiscovered or unnoticed until a petition for naturalization was filed. Here, Plaintiff was denied LPR status originally based on an alleged fraudulent marriage, and Plaintiff contested that decision by appeal. Plaintiff prevailed in that contestation, insofar as USCIS reversed its denial and granted LPR.

There appear to be few district courts that have addressed the precise question of res judicata or collateral estoppel as it relates to the reevaluation of lawful residency upon an application for naturalization, but those that have are split. *See Ahmad*, No. 16-CV-01776, 2017 WL 6945395, at *8-9. In *Biguere v. Hansen*, a case from the Southern District of Ohio, the court opined first, that a petitioner cannot "obtain citizenship by estoppel," and second, that the court cannot "make its own findings of fact and conclusions of law as statutorily required by Section 1421(c)" if it is "bound by *res judicata* to follow the immigration judge's findings and conclusions." No. 1:16-cv-808, 2017 WL 25503, at *2, 3 (S.D. Ohio Jan. 3, 2017). The court's rather cursory analysis in *Biguere* did not frame the issue as it exists here. Indeed, the issue is considerably narrower: whether, as part of the entire naturalization evaluation, the Government may relitigate a previously contested issue that bears on, but is not solely dispositive of, either the agency's lawful residency determination rendered during naturalization or a court's de novo review after denial of naturalization.

In contrast to *Biguere*, the court in *Garcia-Garcia v. Holder*, No. 08-CV-1129-LAB (AJB), 2010 WL 1292155, (S.D. Cal. March 30, 2010), held that the petitioner's naturalization application was correctly denied, based in part on an immigration judge's previous conclusion that petitioner had assisted someone in entering the country illegally. Specifically, an immigration judge found the petitioner responsible for wrongdoing at the end of exclusion proceedings, though the judge granted the petitioner a waiver of removal. *Id*. at *3. Both sides appealed to BIA, which affirmed the immigration judge's decision. *Id*. Later, USCIS relied in part on the immigration judge's findings when it denied petitioner's naturalization application. *Id*. at *3, 7-8. In its de novo review of the denial, the district court

1   held that the petitioner was "bound" by the judgment of the immigration judge and that the immigration

2   judge's finding was a "basis for denial of the petition," citing res judicata. *Id*. at *8. The court addressed

3   the de novo standard of review, stating that:

> [a court] does not defer to the USCIS's findings or conclusions. The
> [c]ourt does not review all prior proceedings de novo, only the USCIS's
> findings and conclusions regarding the naturalization proceedings being
> reviewed. The decisions of courts and adjudicative agencies in other
> proceeding may if appropriate have preclusive effect.

7   *Id*. at *1 (internal citations omitted). Finally, it is not lost on the Court that it was USCIS that raised

8   defensively the issue of preclusion doctrines and argued for their application in *Garcia-Garcia*.

9       This Court finds the reasoning in *Garcia-Garcia* and a similar case, *Ahmad*, persuasive. The

10  reasoning in those cases also is compatible with the Supreme Court's pronouncements on common law

11  preclusion doctrines in relation to administrative agencies and Congress' legislative authority. *Astoria*,

12  501 U.S. at 108. The Court finds further support for this conclusion from examination of *Nesari v.*

13  *Taylor*, 806 F. Supp. 2d 848 (E.D. Va. 2011).

14      In *Nesari*, a district court determined that preclusion principles did not apply to a denial of

15  naturalization despite BIA previously adjudicating in the petitioner's favor a removal dispute on the

16  same issue. *Nesari*, 806 F. Supp. 2d at 868. The district court observed: "Congress has explicitly stated

17  that the findings of the BIA or an [Immigration Judge] in terminating *removal proceedings* do not have

18  any effect whatsoever on the question of whether the USCIS should *naturalize* a person." *Id*. (emphasis

19  original). The relevant portion of 8 U.S.C. § 1429 reads:

> the findings of the Attorney General in terminating **removal proceedings**
> **or in canceling the removal** of an alien pursuant to the provisions of this
> chapter, **shall not be deemed binding in any way** upon the Attorney
> General with respect to the question of whether such person has
> established his eligibility for naturalization as required by this subchapter.

23  8 U.S.C. § 1429 (emphasis added). The district court reasoned that findings of BIA or an immigration

24  judge ("IJ") that are not binding on USCIS are not binding on district courts either, when analyzed in

25

1   conjunction with the statute authorizing de novo review of naturalization denials by the courts, 8 U.S.C.

2   § 1421. *Nesari*, 806 F. Supp. 2d at 868. The district court further opined that removal proceedings and

3   naturalization raise two distinct legal questions. *Id*. at 868-69. Finally, this Court notes that the statutory

4   language inserted by Congress stating the non-binding effect of BIA and IJ removal findings is not

5   repeated in relation to LPR findings.

6         Accordingly, the Court finds collateral estoppel applies to naturalization determinations

7   involving re-adjudication of an issue actually litigated and decided previously. This finding is limited:

8   collateral estoppel on a narrow issue would not preclude the Government from raising newly discovered

9   issues—such as recently uncovered mistake or fraud—that have not been actually litigated and

10  adjudicated previously.

11  **B.      Collateral Estoppel and Plaintiff's Case**

12        Having found that collateral estoppel may apply, where appropriate, in naturalization cases in

13  which an issue was actually litigated and adjudicated previously, this examination turns to the facts at

14  hand. That is, the Court must determine on Plaintiff's summary judgment motion whether collateral

15  estoppel bars the Government from employing Plaintiff's alleged fraudulent first marriage as a reason to

16  deny naturalization based on residency.

17        Collateral estoppel, or issue preclusion, "bars the relitigation of issues actually adjudicated in

18  previous litigation. For [collateral estoppel] to apply, four conditions must be met: (1) the issue at stake

19  was identical in both proceedings; (2) the issue was actually litigated and decided in the prior

20  proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary

21  to decide the merits." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (internal quotations and

22  citations omitted). "Issue preclusion is designed to bar successive litigation of an issue of fact or law

23  actually litigated and resolved in a valid court determination." *Paulo v. Holder*, 669 F.3d 911, 918 (9th

24  Cir. 2011) (internal citations and alteration omitted).

25

1    As a preliminary matter, the Government argues that USCIS granted Plaintiff LPR by mistake.

2    ECF No. 17 at 8. The Government, however, provides no record evidence of mistake, only its bare

3    assertion.[5] Instead, as noted in § III above, before the Court is record evidence of an adverse decision

4    made in Plaintiff's LPR case, which Plaintiff then appealed. Upon appeal, and seemingly outside the

5    scope of 8 C.F.R. § 1003.5(b),[6] USCIS reopened Plaintiff's LPR case, noted its intent to "continue with

6    the adjudication process," ECF No. 16 at Ex. I, and eventually reversed its LPR denial. Though the

7    Court draws all reasonable inferences in favor of the nonmoving party, here the inference that Plaintiff's

8    LPR was granted by mistake after so much investigation and contestation stretches credulity to the

9    breaking point absent evidence of how a mistake of that magnitude occurred. Accordingly, the Court

10   examines the four prongs of collateral estoppel in turn to determine whether the doctrine applies in

11   Plaintiff's case.

12   **1.      The Issue at Stake**

13   The first prong of the collateral estoppel analysis requires examination of the issue at stake in

14   both proceedings to determine whether it is the same. Courts look at the legal standard applicable in both

15   actions, as well as the "factual setting," to make this determination. *Peterson v. Clark Leasing Corp.*,

16   451 F.2d 1291, 1292 (9th Cir. 1971); *see also Sw. Pet Prod., Inc. v. Koch Indus., Inc.*, 32 F. App'x 213,

---

[5] More than one document that might aid the Court's decision in this case either is not provided by the parties or is provided by the Government but redacted in its entirety. The record evidence indicates Plaintiff's previous position that certain legal materials are not in his possession and cannot be obtained from his prior attorney. ECF No. 11-1 at 209-11. The Government, however, does not explain its failure to produce records concerning key issues (e.g., by referencing document retention policies), which is concerning in light of its occasional vague assertions (e.g., "USCIS appears to have …," ECF No. 17-1 at 2) and its heavy-handed redaction. For example, the Government apparently attempted to locate information related to Plaintiff's BIA appeal. ECF No. 11-1 at 123. The email inquiry reads in the subject line "Help finding the outcome of a possible BIA case," and begins in the body with the sender's message saying, "Hi there." *Id*. Everything else after that salutation, including any response to the message, is redacted. *Id*. at 123-25. The Government's vague statements do not allay concerns about its forthcomingness.

[6] The Service Motion to Reopen/Reconsider dated September 15, 2008, ECF No. 16 at Ex. I, references 8 CFR § 103.5(a) as USCIS' authority for reopening Plaintiff's LPR application after he submitted his appeal on January 9, 2006. The text of that regulation likewise does not seem to comport with the posture of Plaintiff's case. Plaintiff had filed an appeal to BIA based on his denied I-130, not requested reconsideration by USCIS or appealed to the Administrative Appeals Office on some other basis. Further, while an "official who denied an application or petition may treat the appeal from that decision as a motion for the purpose of granting the motion," the regulation does not similarly authorize treating an appeal as a motion if the decision may be unfavorable. 8 C.F.R. § 103.5(a)(8).

215 (9th Cir. 2002) ("When a different rule of law applies, the issue is not 'identical' and collateral estoppel is not available.").

In Plaintiff's case, the issue at stake is the same. Under both Plaintiff's naturalization and LPR proceedings, USCIS assessed and rendered decision on whether Plaintiff was admitted lawfully for permanent residence. The relevant statutes governing naturalization, 8 U.S.C. §§ 1427 and 1429 refer, respectively, to a person who has been "lawfully admitted for permanent residence, within the United States" and "lawfully admitted to the Unites States for permanent residence in accordance with all applicable provisions of this chapter." The chapter to which the latter quote refers is Chapter 12, "Immigration and Nationality," which contains the requirements for adjustment of status to lawful permanent residency. Thus, the legal framework to determine whether a person is a lawfully admitted permanent resident for purposes of naturalization is derived directly from the statutes governing conferral of that status originally.

In addition, under both Plaintiff's naturalization and LPR proceedings, USCIS determined that Plaintiff was not admitted lawfully pursuant to 8 U.S.C. § 1154(c) (though USCIS later reversed its decision regarding LPR). That section of INA is often colloquially cited as the marriage fraud bar. It states in part that:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws …

8 U.S.C. § 1154(c). By reaching back to Plaintiff's original LPR determination for reexamination during his naturalization proceedings, USCIS applied the same standard during both proceedings to determine Plaintiff is not lawfully admitted.

The Government urges the Court to find the issues at stake are not identical, stating "adjusting status and naturalizing are not identical" "even if the issues relating to [Plaintiff's] first marriage issue

12

1    may have come up in a different context previously." ECF No. 17 at 19. Specifically, the Government

2    argues that the issues "cannot be identical" because 8 U.S.C. § 1427 "requires [a] fresh determination"

3    of lawful admission for permanent residency. *Id*. However, as explained in § V(A), the Government's

4    argument misses the nuance of the issue. The Court agrees that LPR status is insufficient, in itself, to

5    estop reexamination of lawful residency for purposes of naturalization. The Court disagrees that a

6    discrete, fully litigated issue decided previously may be re-litigated during naturalization. USCIS may

7    reexamine whether a person was lawfully admitted for permanent residence with that narrow exception.

8         The Court finds that the issue at stake in Plaintiff's LPR and naturalization determinations,

9    confined narrowly to the legitimacy of his first marriage as it relates to his lawful admission for

10   permanent residency, is the same.

11              **2.    Actually Litigated and Decided**

12        The next prong of the collateral estoppel inquiry entails scrutinizing whether the issue at stake

13   was actually litigated and decided in the prior proceeding. Based on the record, the Court cannot say that

14   the issue at stake was actually litigated and decided. The favorable decision Plaintiff received after filing

15   his appeal appears to have been made by a USCIS officer. ECF Nos. 11-1 at 640, 16 at ¶ o and Ex. I.

16   While Plaintiff contends that a decision by a USCIS officer constitutes adjudication as required by

17   collateral estoppel, he cites no authorities in support of his position. *See* ECF Nos. 15, 18. Yet, this is a

18   critical point dispositive to his motion.

19        "When an administrative agency is acting in a judicial capacity and resolves disputed issues of

20   fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not

21   hesitated to apply *res judicata* to enforce repose." *Astoria*, 501 U.S. at 107 (internal quotations and

22   citation omitted). "[A]n issue is actually litigated when an issue is raised, contested, and submitted for

23   determination." *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019). "[I]t must be shown that the

24   prior proceeding was adjudicative and adversarial in nature." *Mugomoke v. Hazuda*, No. 13-cv-00984-

25

1   KJM-KJN, 2014 WL 4472743, at *8 (E.D. Cal. Sept. 11, 2014).

2          Other district courts in this circuit that have examined whether the various adjustments of status

3   decided by USCIS officers constitute adversarial proceedings have concluded that those adjustments do

4   not. *See, e.g., Ahmad*, No. 16-CV-01776, 2017 WL 6945395; *Mugomoke*, No. 13-cv-00984-KJM-KJN,

5   2014 WL 4472743; *Janjua v. Neufeld*, No. 15-cv-05475-EMC, 2017 WL 2876116 (N.D. Cal. July 6,

6   2017). Some of the cases cited involve other adjustments, such as from asylum to lawful permanent

7   residency; nevertheless, the principles and authorities relied on in reaching those cases' conclusions are

8   persuasive here. For example, in *Cospito v. Att'y Gen. of United States*, 539 F.3d 166 (3d Cir. 2008), the

9   court explained that "because 'applications for adjustment of status are not normally adversarial in

10  nature, and do not involve an IJ,' the petitioner's adjustment of status [is] not adjudicatory in nature, and

11  thus is not entitled to res judicata effect," quoting *Andrade v. Gonzales*, 459 F.3d 538, 545 (5th Cir.

12  2006). Such is Plaintiff's case. Absent adjudication by BIA or an IJ, the Court finds no authority that

13  USCIS is acting in its "judicial capacity" when a USCIS officer renders decision.[7]

14         Obscuring matters somewhat, neither party provides substantive proof of the disposition or

15  handling of Plaintiff's appeal while it was pending from January 9, 2006, to September 15, 2008.

16  Clearly, Plaintiff took a step in actually litigating the issue of his first marriage when he filed his appeal.

17  But it is unclear whether USCIS reciprocated, which would have entailed briefing the matter and

18  submitting both the brief and Plaintiff's appeal to BIA for decision. Without evidence of those steps, as

19  well as a decision from BIA, there is no clear litigation and adjudication as contemplated under existing

20  law.

21         Based on all of the above, the Court finds that Plaintiff has not presented sufficient evidence or

22

23  ───────────────
    [7] While the Government contends that "the record does not contain an actual decision by USCIS relating to the bona fides of
24  Plaintiff's first marriage" and "the decision by USCIS on adjustment of status is not a written decision, but rather an approval
    stamp," ECF No. 17 at 20, 21, that argument borders on nonsensical in its insistence on formalism. The Court has no
    difficulty in finding USCIS reached a decision in Plaintiff's LPR case; rather, the issues are whether USCIS actually litigated
25  the case and whether it was acting in its judicial capacity in reaching its decision.

authority to determine on summary judgment whether his first marriage was actually litigated and decided for purposes of collateral estoppel. Because Plaintiff has not met his burden on this prong of the collateral estoppel test, the Court declines to address the final two prongs.

## VI. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 14, is DENIED.

The Court believes this order does not contain any information that should remain under seal and therefore intends to release an unsealed version. However, in an abundance of caution, the parties are **ordered to show cause within five (5) days** of the date of this order why any part of this order should be redacted.

IT IS SO ORDERED.

Dated:   **December 9, 2019**                          **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES CHIEF DISTRICT JUDGE